UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JESSICA A. STOLER,

    Plaintiff,

v.                                               Civil Action no. 2:18-cv-00988

PENNYMAC LOAN SERVICES, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is plaintiff Jessica L. Stoler's motion to remand to the Circuit Court of Kanawha County, West Virginia, filed July 17, 2018. Defendant PennyMac Loan Services, LLC, ("PennyMac"), filed a response in opposition on August 3, 2018, to which the plaintiff replied on August 10, 2018.

### I. Background

This case involves the plaintiff's April 2014 $109,693.00 Single Family Housing Guaranteed Loan Program mortgage loan, serviced by defendant PennyMac. Compl. at ¶ 4. In February 2017, plaintiff began having difficulty affording her monthly loan payments of $547.68; she requested but was denied assistance from PennyMac. Id. at ¶¶ 7-8; Defendant's Opposition, ECF # 18, Ex. A at 6. In May 2017, plaintiff's situation worsened when she lost her job; she again requested

assistance from PennyMac.  Id. at ¶ 9.  PennyMac then provided plaintiff with a forbearance plan, allegedly with the assurance that, at the end of it, her loan would be permanently modified. Id. at ¶ 10.

In November 2017, plaintiff became unable to make her forbearance payments because her unemployment income expired. Id. at ¶ 11.  According to the complaint, she then contacted PennyMac several times to inquire about permanent modification of her loan.  Id. at ¶¶ 12-13.  PennyMac allegedly did not respond to these inquiries until January, after they already scheduled a foreclosure sale for January 30, 2018.  Id. at ¶¶ 13, 15, 16.  PennyMac denied plaintiff's request because it was made too close to a scheduled foreclosure, which plaintiff disputes.  Id. at ¶ 16.  By early January 2018, plaintiff regained employment and was able to make her monthly mortgage payments but could not afford the arrearage that had accumulated during the prior months.  Id. at ¶ 14.

On January 25, 2018, plaintiff contacted PennyMac, notifying it of alleged servicing violations and requesting that future communications be directed to plaintiff's counsel.  Id. at ¶ 17.  Plaintiff accuses PennyMac of nonetheless continuing to contact her directly to collect payment.  Id. at ¶ 18. Plaintiff further accuses PennyMac of failing to put forth a

good faith effort to achieve a sustainable payment plan and refusing to properly process her requests for loss mitigation. Id. at ¶ 19. Plaintiff asserts that she remains able to pay her regular monthly payments but cannot afford the "accrued arrears." Id. at ¶ 21.

Plaintiff filed this action in the Circuit Court of Kanawha County on May 2, 2018, asserting four counts under state law. Plaintiff does not specify the amount of damages she seeks, yet she asserts that she is entitled to the following: for Count I alleging violations of the West Virginia Consumer Credit Protection Act ("WVCCPA"), she seeks maximum civil penalties of $1,000 for each violation pursuant to W. Va. Code § 46A-5-101-106, actual damages, attorney's fees and costs, and such other relief the court deems equitable and just; for Count II alleging negligence, she seeks appropriate equitable relief, actual damages, attorney's fees, and such other relief the court deems equitable and just; for Count III alleging tortious interference with contract, she seeks actual damages, punitive damages, attorney's fees, and such other relief the court deems equitable and just; and for Count IV alleging estoppel, she seeks appropriate equitable relief, actual damages, and such other relief the court deems equitable and just.

PennyMac removed the action to this court on June 1, 2018, pursuant to the court's diversity jurisdiction. The plaintiff now objects to the removal, claiming that the amount in controversy does not meet the $75,000 requirement. The parties do not dispute that they are completely diverse.

II. Discussion

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "Removal jurisdiction is to be construed narrowly, and when jurisdiction is doubtful, remand is proper." Caufield v. EMC Mortg. Corp., 803 F. Supp. 2d 519, 529 (S.D.W. Va. 2011) (citing Mulcahey v. Columbia Organic Chemicals Co. Inc., 29 F.3d 148, 151 (4th Cir.1994)).

The court is vested with original jurisdiction of all actions between citizens of different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). "'Estimating the amount in controversy is not nuclear science, as a removing defendant is somewhat constrained by the plaintiff." Scott v. Cricket Commc'ns, LLC, 865 F.3d 189, 196 (4th Cir. 2017) (quoting S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1317 (11th Cir. 2014)). "[P]laintiffs are

free to purposely omit information that would allow a defendant to allege the amount in controversy with pinpoint precision." Id., (citing Lincoln Prop. Co. v. Roche, 546 U.S. 81, 94 (2005)). Accordingly, for cases in which the plaintiff has made an unspecified demand for damages in state court, a defendant asserting the existence of federal diversity jurisdiction is tasked with proving by a "preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount. This test is framed alternatively as a requirement that a defendant demonstrate that it is more likely than not that the amount in controversy exceeds the jurisdictional amount." Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 935 (S.D.W. Va. 1996) (citing Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir.1992)).

In calculating this amount, the court "looks to the totality of the circumstances, including the complaint, the type and extent of the plaintiff's injuries, the amounts awarded in similar cases, and losses incurred to date of removal." Scaralto v. Ferrell, 826 F. Supp. 2d 960, 963–64 (S.D.W. Va. 2011). The court uses this information "to estimate what a reasonable plaintiff would demand or claim. If the court thinks that a reasonable plaintiff would claim more than $75,000, then the defendant has met its burden of proof." Id.

PennyMac argues two alternative methods for establishing the amount in controversy: first, that the amount of damages sought, alone, exceeds $75,000; and second, that the total value of the home and/or the loan is in controversy. Finding the first argument dispositive, the court does not address the second.

Although the plaintiff's complaint does not contain a demand for a specific monetary award, the complaint nonetheless reflects a claim for damages in excess of $75,000. The court herein carefully analyzes the complaint and each type of relief sought.

Turning first to statutory penalties under the WVCCPA, the plaintiff seeks "[m]aximum civil penalties for each violation" of the WVCCPA. Compl. at p. 5. Accordingly, the court affords $1,000 per violation, which is the standard method of calculating penalties for WVCCPA violations in this setting. See e.g., Maxwell v. Wells Fargo Bank, N.A., No. 2:09-CV-0500, 2009 WL 3293871, at *2 (S.D.W. Va. Oct. 9, 2009), and Stottlemire v. Caliber Home Loans, Inc., No. 1:16-CV-118, 2017 WL 282419, at *2 (N.D.W. Va. Jan. 20, 2017); and see W. Va. Code § 46A-5-101. As this court did in Maxwell, so too here must it examine the complaint to determine the total number of WVCCPA violations alleged, which the plaintiff does not specify in her

complaint or motion to remand.  The defendant asserts: "hampered in part by Plaintiff's deliberately vague pleading, PennyMac has been able to discern <u>at least</u> six statutory violations[.]" ECF # 18 at 10, n. 3 (emphasis in original).

In determining the number of such violations, the court most clearly finds allegations in paragraph 13, wherein the plaintiff accuses PennyMac of failing to respond to her "several inquiries[,]" paragraph 16, wherein she accuses PennyMac of misrepresenting when she requested loss mitigation, and paragraph 18, wherein she accuses PennyMac of contacting her, instead of her attorney, by telephone and written correspondence.  Therefrom, the court finds at least six alleged violations: at least three from the "several inquiries," one for the declination of plaintiff's request for assistance in lieu of foreclosure, one for the telephone communication, and one for the written correspondence.  Although the plaintiff likely plans on alleging more, the court finds the defendant's claim of six statutory violations to be a reasonable, conservative estimate.[1]

---

[1] Notably, the plaintiff does not dispute the defendant's estimate or provide an alternative.  In her motion, the plaintiff merely devotes one sentence to the issue, stating that the defendant's estimate is speculative and is far less than the amount in <u>Maxwell</u>.  Memo. in Support, ECF # 12 at 8.  This is true, though irrelevant.  The court pauses to note that, aside from the greater number of violations found in the 2009 decision in <u>Maxwell</u>, the maximum statutory penalties used therein were greater as well, reflecting 35 years of inflationary increases

Accordingly, the court assigns a value of $6,000 to the request for statutory penalties.

Because attorney's fees are specifically provided for in the WVCCPA, they are also included in the calculation for the amount in controversy. In similar cases, the court has found a reasonable estimate of attorney's fees to be upwards of $25,000. See McGraw v. Discover Fin. Servs., Inc., No. 2:05-CV-0215, 2005 WL 1785259, at *6 (S.D.W. Va. July 26, 2005), Patton v. Fifth Third Bank, No. 2:05-CV-0790, 2006 WL 771924, at *3 (S.D.W. Va. Mar. 24, 2006), and Kessler v. Fay Servicing, LLC, No. 2:18-CV-00518, 2018 WL 4628322, at *3 (S.D.W. Va. Sept. 27, 2018). The court finds $25,000 to be a reasonable estimate here. Indeed, the court notes that not only was plaintiff's counsel here, Bren J. Pomponio, also the plaintiff's counsel in Kessler, but that Mr. Pomponio has previously requested fees in a default judgment case in the amount of $325 per hour in Davis v. Second Chance Pre-Owned Auto Sales, LLC, which Judge Goodwin found to be reasonable. No. 2:14-CV-26957, 2015 WL 2137272, at *4 (S.D.W.

---

from the WVCCPA's creation in 1974. In 2015, the legislature amended the section, W. Va. Code. § 46A-5-106, so that penalties are adjusted for inflation from September 1, 2015, rather than from 1974, resulting today in a maximum penalty slightly in excess of $1,000 per violation.

Va. May 7, 2015). It would take only 77 hours for fees at that rate to surpass $25,000.

As for actual damages, the plaintiff asserts in her complaint that she suffered damage by the accrued arrears, ¶ 30, the imminent loss of her home, ¶ 36, as well as worry and stress, annoyance and inconvenience, and fear of loss of her home, ¶ 22. She seeks actual damages for each of her four counts. In calculating this amount, the court notes that it "'is not required to leave common sense behind.'" Weddington v. Ford Motor Credit Co., 59 F. Supp. 2d 578, 584 (S.D.W. Va. 1999) (quoting Mullins v. Harry's Mobile Homes, Inc., 861 F. Supp. 22, 24 (S.D.W. Va. 1994)).

In her complaint, the plaintiff repeatedly emphasizes that she has been significantly damaged by the "substantial" amount of the arrears "accrued on the loan over the course of years," though she does not quantify the damage in dollars. See Compl. at ¶ 29, ¶ 30, ¶ 35, and ¶ 36. As for the remaining compensatory damages sought, the court reasonably assumes that the plaintiff will seek substantial damages based on the strong accusatory language in her complaint and her alleged damages for worry and stress, annoyance and inconvenience, and fear of loss of her home. While the court, based on its own experience, projects these damages, if recovered, as falling in the range of

$1,000 to $10,000, the court, having insufficient evidence from which to assign a dollar amount to these damages, forgoes speculating.

The plaintiff seeks punitive damages per Count III for tortious interference with contract. Inasmuch as the $6,000 civil penalty under the WVCCPA is itself punitive, it is not included in the calculation of punitive damages, which are awarded in proportion to compensatory damages. Attorney's fees and costs awarded pursuant to the WVCCPA are considered compensatory damages and "shall be included in the compensatory to punitive damages ratio in cases where punitive damages are available." Quicken Loans, Inc. v. Brown, 230 W. Va. 306 Syl. pt. 11 (2012). Punitive damages would be potentially available here, should the plaintiff prevail on her tortious interference or negligence claims.

The United States Supreme Court has suggested that single digit ratios for calculating punitive damages are presumptively valid. State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408 (2003). For purposes of this motion, the court finds the ratio of 2.5 to 1 to be a reasonable, conservative estimate. Cf., Patton, 2006 WL 771924, at *3 (finding the parties' proposed ratio of 2.55 to 1 to be a reasonable, "conservative punitive damages ratio" for

calculating the amount in controversy), and Judy v. JK Harris & Co. LLC, No. 2:10-CV-01276, 2011 WL 4499316, at *7 (S.D.W. Va. Sept. 27, 2011) (using a 3 to 1 ratio to calculate "a reasonable estimate of the likely amount [plaintiff] would be awarded"). Accordingly, based on the estimated $25,000 in compensatory damages, punitive damages would equal $62,500.

To summarize, the court has found it more likely than not that the plaintiff will seek damages in the amount of at least: $6,000 for statutory penalties, $25,000 for attorney's fees and costs, and punitive damages, which may be measured at $62,500. Accordingly, the estimated total amount in controversy is $93,500 plus actual damages and equitable relief, well in excess of the jurisdictional requirement.

Bolstering this conclusion is the fact that the plaintiff has failed to argue or provide any evidence that she is seeking less than $75,000. Indeed, had the plaintiff wished to maintain her action in state court, she could have stipulated to an amount of damages at $75,000 or below per McCoy v. Erie Ins. Co., 147 F. Supp. 2d 481, 485 (S.D.W. Va. 2001). While the burden lays with the removing party, the court notes that when the party seeking remand fails plausibly to dispute the removing party's assertions, the court has difficulty finding that the

plaintiff plans on requesting less than the amount proffered by the removing party.

Accordingly, having considered the entire record and made an independent evaluation that the amount in controversy surpasses the $75,000 threshold, the court finds that remand is not warranted.

III. Conclusion

For the foregoing reasons, it is ORDERED that the plaintiff's motion be, and it hereby is, denied.

It is further ORDERED, pursuant to this court's order of July 20, 2018 staying the briefing on the pending motion to dismiss, (ECF # 15), that briefing is no longer stayed, and PennyMac has until December 20, 2018 to file its reply in support of its motion to dismiss.

The Clerk is directed to transmit copies of this order to all counsel of record and to any unrepresented parties.

ENTER: December 6, 2018

John T. Copenhaver, Jr.
Senior United States District Judge