# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA
# AT CHARLESTON

JESSICA A. STOLER,

    Plaintiff,

v.                              Civil Action no. 2:18-cv-00988

PENNYMAC LOAN SERVICES, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is the defendant PennyMac Loan Services, LLC's ("PennyMac") motion to dismiss, filed June 15, 2018. The plaintiff, Jessica A. Stoler, filed a response on July 13, 2018. Briefing on the motion was thereafter stayed until the court's denial of the plaintiff's motion to remand on December 6, 2018; the defendant's reply was subsequently filed on December 20, 2018.

### I. Background

This case involves the plaintiff's April 2014 $109,693.00 Single Family Housing Guaranteed Loan Program mortgage loan, serviced by defendant PennyMac. Compl. at ¶ 4. In February 2017, plaintiff began having difficulty affording her monthly loan payments; she requested but was denied assistance from PennyMac. Id. at ¶¶ 7-8. In May 2017,

plaintiff's situation worsened when she lost her job; she again requested assistance from PennyMac. Id. at ¶ 9. PennyMac then provided plaintiff with a forbearance plan, allegedly with the assurance that, at the end of it, her loan would be permanently modified. Id. at ¶ 10.

In November 2017, plaintiff became unable to make her forbearance payments because her unemployment income expired. Id. at ¶ 11. She then contacted PennyMac several times over a six-week period to inquire about permanent modification of her loan. Id. at ¶¶ 12-13. PennyMac allegedly did not respond to these inquiries until January, after it had already scheduled a foreclosure sale for January 30, 2018. Id. at ¶¶ 13, 15, 16. PennyMac denied the plaintiff's request because, according to the language found in the complaint, it was "made within 37 days of a scheduled foreclosure[,]" although the plaintiff claims that the request was made far earlier than PennyMac represented. Id. at ¶ 16. By early January 2018, plaintiff regained employment and was able to make her monthly mortgage payments but could not afford the arrearage that had accumulated during the prior months. Id. at ¶ 14.

On January 25, 2018, plaintiff contacted PennyMac, notifying it of alleged servicing violations and requesting that future communications be directed to plaintiff's counsel. Id.

at ¶ 17. Plaintiff accuses PennyMac of nonetheless continuing to contact her directly to collect payment. Id. at ¶ 18. Plaintiff further accuses PennyMac of failing to put forth a good faith effort to achieve a sustainable payment plan and refusing to properly process her requests for loss mitigation. Id. at ¶ 19. Plaintiff asserts that she remains able to pay her regular monthly payments but cannot afford the "accrued arrears." Id. at ¶ 21.

Plaintiff filed this action in the Circuit Court of Kanawha County on May 2, 2018, asserting four counts: Count I alleges violations of the West Virginia Consumer Credit Protection Act ("WVCCPA"), W. Va. Code §§ 46A-2-127 and -128; Count II alleges negligence; Count III alleges tortious interference with contract; and Count IV alleges estoppel.

PennyMac removed the action to this court on June 1, 2018, pursuant to the court's diversity jurisdiction. The plaintiff's motion to remand was denied.

## II. Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing ... entitle[ment] to relief." Fed.R.Civ.P. 8(a)(2); Erickson v. Pardus, 551 U.S. 89, 93 (2007). Rule 12(b)(6)

correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The required "short and plain statement" must provide "'fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009). The court must also "draw[ ] all reasonable ... inferences from th[e] facts in the plaintiff's favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

## III. Discussion

### A. Count I: Violations of the WVCCPA

In Count I of the complaint, the plaintiff alleges that the defendant used "fraudulent, deceptive, or misleading representations or means to collect or attempt to collect [a claim] or to obtain information concerning Plaintiff, in violation of section 46A-2-127 of the West Virginia Code."

Compl. ¶ 24. The complaint further alleges that the defendant used "unfair or unconscionable means in efforts to collect a debt, in violation of section 46A-2-128 of the West Virginia code." Id. at ¶ 25.

W. Va. Code § 46A-2-127 states pertinently that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers."

The defendant contends that Fed. R. Civ. P. 9(b)'s heightened pleading standard, which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake[,]" is applicable to this claim because it sounds in fraud. "[T]he determination of whether [Rule 9(b)'s] heightened standards apply depends on the complaint's factual allegations." Wamsley v. LifeNet Transplant Servs. Inc., No. 2:10-CV-00990, 2011 WL 5520245, at *4 (S.D.W. Va. Nov. 10, 2011) (citing Borsellino v. Goldman Sachs Grp., Inc., 477 F.3d 502, 507 (7th Cir.2007)). In making this determination, the court examines "whether the claim requires an essential showing of fraud." Baltimore Cty. v. Cigna Healthcare, 238 F. App'x 914, 921 (4th Cir. 2007).

The defendant provides no caselaw, nor has the court found any, wherein a court has applied the 9(b) standard to this

section of the WVCCPA.  Instead, this court has regularly applied the Rule 8(a)(2) "short and plain statement" standard in such instances.  See e.g., Ranson v. Bank of Am., N.A., No. 3:12-CV-5616, 2013 WL 1077093, at *7 (S.D.W. Va. Mar. 14, 2013) (applying Rule 9(b) standard to common law fraud claim and Rule 8(a)(2) standard to WVCCPA claims, including § 46A-2-127), Hanson v. Amerihome Mortg. Co., LLC, No. 2:17-CV-03691, 2017 WL 6626328, at *3 (S.D.W. Va. Dec. 28, 2017) (applying Rule 8(a)(2) standard to WVCCPA claims, including § 46A-2-127), and McNeely v. Wells Fargo Bank, N.A., No. 2:13-CV-25114, 2014 WL 7005598, at *2 (S.D.W. Va. Dec. 10, 2014) (same).

The same is appropriate here.  § 46A-2-127 of the WVCCPA does not require an essential showing of common law fraud.  Rather, common law claims have consistently remained distinct and separate from WVCCPA claims.  See e.g., Pemberton v. U.S. Bank, No. 5:11-CV-00630, 2012 WL 37113, at *3 (S.D.W. Va. Jan. 5, 2012) ("this Court finds that the common law claims must be supported by the particular facts of the case, and these claims must be separate or distinct from the claims contained in the [WVCCPA].").  This is consistent with the purpose of the WVCCPA, which is to broaden the protections available to consumers beyond mere common law claims: "The legislative history of the Act makes it clear that the purpose of creating

6

the Act was because so many consumers failed to accomplish any results at common law against creditors." <u>Casillas v. Tuscarora Land Co.</u>, 186 W. Va. 391, 394, 412 S.E.2d 792, 795 (1991).

Accordingly, the court applies the Rule 8(a)(2) standard here, which the plaintiff has met. The complaint alleges, <u>inter alia</u>, that the defendant misrepresented its reasons for denying Ms. Stoler's request for loss mitigation when it claimed that the request was made too near to a foreclosure sale even though Ms. Stoler had in fact made the request far earlier. Compl. ¶ 17. This misrepresentation, if true, could support a claim under § 46A-2-127 for using fraudulent, deceptive, or misleading representations to collect a claim. Accordingly, this claim survives.

The plaintiff's second WVCCPA claim alleges that the defendant used unfair or unconscionable means in efforts to collect a debt, in violation of § 46A-2-128. That section states: "No debt collector may use unfair or unconscionable means to collect or attempt to collect any claim[,]" and lists six instances, (a)-(f), of conduct deemed to violate the section, but does not limit its scope to those six. W. Va. Code § 46A-2-128.

From the complaint, it appears that two events possibly form the basis for this count: first, the defendant

scheduling the foreclosure sale instead of responding to Ms. Stoler's requests for additional loss mitigation; and second, the defendant's contacts with Ms. Stoler individually after learning she was represented by an attorney.

As for the first possible claim -- that PennyMac ignored Ms. Stoler's requests for additional loss mitigation after she failed to make her forbearance plan payments and instead scheduled foreclosure -- the court finds this to be a plausible claim for relief.  <u>See</u>, e.g., <u>Hanson v. Amerihome Mortg. Co., LLC</u>, at *5 ("the Hansons plead enough facts in their other allegations that Amerihome scheduled the foreclosure sale during the loss mitigation process and failed to advise them of their appeal rights for a jury to find that Amerihome violated this section of the statute.").

As for the second, that PennyMac contacted Ms. Stoler individually after it was advised that she was represented by counsel, subsection (e) of the statute specifically provides that "[a]ny communication with a consumer made more than three business days after the debt collector receives written notice from the consumer or his or her attorney that the consumer is represented by an attorney specifically with regard to the subject debt[,]" constitutes unfair or unconscionable conduct. The subsection further provides:

> To be effective under this subsection, such notice must clearly state the attorney's name, address and telephone number and be sent by certified mail, return receipt requested, to the debt collector's registered agent[.] . . . Regular account statements provided to the consumer and notices required to be provided to the consumer pursuant to applicable law shall not constitute prohibited communications under this section[.]

W. Va. Code § 46A-2-128(e). PennyMac faults the complaint for not specifying the content of PennyMac's correspondence with Ms. Stoler or addressing the possibility that any written correspondence was a regular account statement. The complaint does state, however, that the defendant contacted her, instead of her attorney, "seeking to collect." Compl. ¶ 18. Moreover, "[i]t is not a requirement that the Complaint set forth each and every fact known to Plaintiffs." Petty v. Countrywide Home Loans, Inc., No. 3:12-CV-6677, 2013 WL 1837932, at *13 (S.D.W. Va. May 1, 2013), disagreed with on other grounds by McFarland v. Wells Fargo Bank, N.A., 810 F.3d 273, 282 (4th Cir. 2016). Although the plaintiff has not set forth each fact giving rise to this claim -- i.e. the content of PennyMac's correspondence and whether Ms. Stoler's notice to PennyMac was sent by certified mail, meeting all the requirements in subsection (e) -- such detail is not necessary. See e.g., id. ("Defendants argue that the claim should be dismissed because the Complaint does not identify the name and address of counsel. The Court

soundly rejects this argument.") Drawing all reasonable inferences in the plaintiff's favor, as is required, this claim survives.

Accordingly, the motion to dismiss is denied as to Count I, alleging violations of the WVCCPA.

B. Count II: Negligence

The defendant seeks to dismiss Count II, alleging negligence, as being barred by the economic loss doctrine. That doctrine provides that "absent a 'special relationship' between the parties, a plaintiff 'cannot maintain an action in tort for an alleged breach of a contractual duty.'" <u>McNeely v. Wells Fargo Bank, N.A.</u>, at *5 (quoting <u>Lockhart v. Airco Heating & Cooling, Inc.</u>, 211 W. Va. 609, 567 S.E.2d 619, 624 (W.Va.2002)).

The parties dispute whether PennyMac, a servicer but not the owner of the loan, is in a contractual relationship with the plaintiff. PennyMac claims that it is in a contractual relationship with the plaintiff because it is bound by the terms of the loan contract. The plaintiff, on the other hand, claims that it is not, although its only support for such a contention is, confusingly, that PennyMac claims not to be a party to the contract: "according to Defendant, Defendant is not a party to the contract[,]" Compl. ¶ 28, and that "Defendant is not bound

to the contract (as Defendant would certainly argue if Plaintiffs asserted a breach of contract claim against it)[.]" Plaintiff's Response, ECF # 10 at 12. Quite to the contrary, the complaint does, in fact, seek to bind PennyMac to the requirements of the loan contract, stating: "pursuant to the requirements of Plaintiff's RHA insured loan, Defendant owed a duty to Plaintiff . . . [.]" Compl. ¶ 27.

Nonetheless, because plaintiff's negligence claim does not differ in substance from her WVCCPA claims, Count II still cannot survive without the existence of a special relationship, even if no contractual relationship exists between the parties. As this court has explained:

> To be clear, even if the court assumes that Nationstar was not party to the Deeds of Trust, as the plaintiffs suggest in their Response, the negligence claim still cannot survive without this special relationship. This conclusion stems from the WVCCPA. While a plaintiff may pursue common law claims alongside claims under the WVCCPA, see W. Va. Code § 46A-2-101(3) ("Nothing contained in this section shall be construed as affecting any buyer's or lessee's right of action, claim or defense which is otherwise provided for [under] common law."), the West Virginia Supreme Court of Appeals has held that common law actions may be maintained only to the extent that they exist "separate from the Act." Casillas v. Tuscarora Land Co., 186 W.Va. 391, 412 S.E.2d 792, 795 (W.Va.1991).

McNeely v. Wells Fargo Bank, N.A., at *6.

Here, the plaintiff's negligence claim does not differ in substance from her WVCCPA claims. Rather, they both concern the defendant's alleged failure to adequately and properly consider the plaintiff's request for loss mitigation. Indeed, insofar as the defendant denied the plaintiff's first request, which does not appear to be the source of any claim, and granted plaintiff's second request, whereafter the plaintiff ceased making payments, the plaintiff's only possible claim for breach of a duty must relate to the defendant's failure to timely respond to the third request and misrepresentation thereof, which is covered in full by the WVCCPA claims. The plaintiff must therefore demonstrate the existence of a special relationship, because the plaintiff has not shown that the defendant owed her any duty apart from that which is imposed by the WVCCPA. See e.g., O'Brien v. Quicken Loans, Inc., No. 2:12-CV-5138, 2013 WL 2319248, at *10 (S.D.W. Va. May 28, 2013) ("In the absence of a special relationship, O'Brien has alleged no duty apart from the WVCCPA. Claims stemming from the violation of those duties do not sound in tort, and Count V fails to state a cognizable negligence claim.").

"The existence of a special relationship will be determined largely by the extent to which the particular plaintiff is affected differently from society in general."

Glascock v. City Nat'l Bank of W. Va., 213 W.Va. 61, 66 (2002). In the lender-borrower context, or, here, the servicer-borrower context, a special relationship may exist where a lender performs services not normally provided by a lender to a borrower. See id. at 67 ("[W]here a lender making a construction loan to a borrower creates a special relationship with the borrower by maintaining oversight of, or intervening in, the construction process, that relationship brings with it a duty to disclose any information that would be critical to the integrity of the construction project."). The possession of information unique to the lender can also indicate a special relationship. See id. (finding a special relationship where "the bank possessed information of no interest to 'society in general,' but of great interest to the [plaintiffs]").

The plaintiff, in apparent anticipation of this argument, states in the complaint that "Defendant servicer engaged in significant communications and activities with Plaintiff and the loan thereby creating a special relationship with Plaintiff[.]" Compl. ¶ 27. The remainder of the complaint does not support this contention, however, inasmuch as the defendant performed only those services customarily provided by a loan servicer to a borrower. See e.g., McNeely v. Wells Fargo Bank, N.A., at *6 ("Here, Nationstar assisted the plaintiffs in

13

applying for a loan modification, conducted the loan modification review process, and handled the plaintiffs' mortgage payments. These are services normally provided to a borrower by a loan servicer." (citations omitted)).

Accordingly, the motion is granted as to Count II and that count is dismissed.

C. Count III: Tortious Interference with Contract

Count III in the complaint alleges tortious interference with contract. To assert a prima facie claim for tortious interference with contract, a plaintiff must show: "(1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages." Hatfield v. Health Mgmt. Assocs. of W. Virginia, 223 W. Va. 259, 267, (2008) (emphasis omitted).

Plaintiff states that PennyMac is not a party to the contract, relying again on PennyMac's supposed belief thereof: "According to PennyMac, Massachusetts Mutual Life Insurance Company c/o Barings LLC is the owner of the subject mortgage loan and Defendant is not a party to the contract." Compl. ¶ 33. The defendant seeks to dismiss the plaintiff's claim,

stating, <u>inter alia</u>, that PennyMac, even if not a party to the contract, is an agent of a contracting party, and thus cannot interfere with its principal's contract. The defendant is correct in this regard.

"This Court has held that generally, an agent, although not a party to the contract, is not liable for tortious interference for interfering with the contract of its principal." <u>Hanson v. Amerihome Mortg. Co., LLC</u>, at *7 (citing <u>Cavcon, Inc. v. Endress Hauser, Inc.</u>, 557 F. Supp. 2d 706, 725 (S.D. W. Va. 2008). As the court found in <u>Hanson</u>, a loan servicer, as an agent of the principal loan holder, cannot be liable for tortious interference with its principal's contract unless "the agent was acting in its own interest and not in the interest of the principal." <u>Id.</u> (citing <u>Parker v. BAC Home Loans Servicing LP</u>, 831 F. Supp. 2d 88 (D.D.C. 2011)). Accordingly, PennyMac, as an agent of Massachusetts Mutual Life Insurance Company, cannot be held liable for tortious interference with its principal's contract unless it was acting outside the scope of its agency, of which no suggestion is made here. Accordingly, the motion is granted as to Count III and that count is dismissed.

**D. Count IV: Estoppel**

Lastly, the defendant seeks to dismiss the plaintiff's final count, which seeks estoppel, a viable cause of action in West Virginia. See, e.g., Folio v. City of Clarksburg, 655 S.E.2d 143, 148 (W.Va.2007) (per curiam). As the defendant notes, this court has previously held claims for equitable estoppel to the heightened 9(b) pleading standard. See Holtzapfel v. Wells Fargo Bank, N.A., No. 2:12-CV-00937, 2013 WL 1337283, at *6 (S.D.W. Va. Mar. 29, 2013) ("In addition to fraud and mistake, causes of action arising from 'inequitable conduct,' such as equitable estoppel, have been held subject to the heightened pleading standard of Rule 9(b)." (citing Stowe Woodward, L.L.C. v. Sensor Prods., Inc., 230 F.R.D. 463, 465 & n. 1 (W.D.Va.2005), Guerrero v. Gates, 442 F.3d 697, 706–07 (9th Cir.2006), and Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103–04 (9th Cir.2003))).

To satisfy the heightened standard, a plaintiff must, "at a minimum, describe 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir.2008) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir.1999)). "A court

should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Harrison, 176 F.3d at 784. The complaint may suffice if it alleges a general time of year during which the misrepresentations are said to have occurred and refers generally to the organization from which they emanated. See McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013).

The plaintiff's claim for estoppel alleges that "Defendant's agents represented to Plaintiff that Defendant would provide assistance to keep Plaintiff and her family in their home rather than pursue foreclosure." Compl. ¶ 38. This is the first mention of any such representation, however, and there is no reference to when it occurred. The closest reference to any such misrepresentation in the complaint is when "PennyMac provided Plaintiff with a forbearance plan with the assurance that at the end of the forbearance plan, her loan would be permanently modified." Id. at ¶ 10. This is a different representation, however, than the one alleged in Count IV -- that the defendant would provide assistance to the

plaintiff rather than pursue foreclosure. It is unclear when, even generally, that representation occurred.

Moreover, even if the complaint met the 9(b) standards, it nonetheless fails to state a claim on this count. To maintain a claim for estoppel in West Virginia, a plaintiff must show:

> [(1)] a false representation or a concealment of material facts; [(2)] it must have been made with knowledge, actual or constructive of the facts; [(3)] the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; [(4)] it must have been made with the intention that it should be acted on; and [(5)] the party to whom it was made must have relied on or acted on it to his prejudice.

Syl. Pt. 3, Folio v. City of Clarksburg, 655 S.E.2d 143 (W.Va.2007) (quoting Syl. Pt. 6, Stuart v. Lake Washington Realty Corp., 92 S.E.2d 891 (W.Va.1956)). The complaint alleges that "Plaintiff had a reasonable expectation that Defendant would provide her with assistance of some form and not proceed with foreclosure on her home, as promised." Compl. ¶ 41. It is undisputed, however, that the plaintiff was, in fact, receiving assistance from PennyMac, through the forbearance plan, at the time the foreclosure sale was scheduled. It is further undisputed that the plaintiff ceased making payments under the forbearance plan before the foreclosure sale was scheduled. Although she made additional requests for assistance, it is not

alleged, and indeed common sense would not suggest, that PennyMac represented to the plaintiff that it would provide assistance and not pursue foreclosure in all circumstances -- even if the plaintiff became unable to make any payments. Accordingly, insofar as the defendant represented that it would provide assistance to the plaintiff, and insofar as the defendant provided such assistance before pursuing foreclosure, the plaintiff cannot show that any false representation was made in that regard.

Accordingly, the motion is granted as to Count IV and that count is dismissed.

### IV. Conclusion

For the reasons set forth above, the court accordingly ORDERS that:

1. Defendant's motion to dismiss be, and it hereby is, denied with respect to plaintiff's WVCCPA claims (Count I); and

2. Defendant's motion to dismiss be, and it hereby is, granted with respect to plaintiff's negligence claim (Count II), tortious interference with contract claim (Count III), and estoppel claim (Count IV).

The Clerk is directed to transmit copies of this order to all counsel of record and to any unrepresented parties.

ENTER: February 19, 2019

_____
John T. Copenhaver, Jr.
Senior United States District Judge