# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

JESSICA A. STOLER,

    Plaintiff,

    v.                                                                                 Civil Action No. 2:18-CV-00988

PENNYMAC LOAN SERVICES, LLC

    Defendant.

**PENNYMAC LOAN SERVICES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant PennyMac Loan Services, LLC ("PennyMac") submits this Memorandum of Law in support of its Motion for Summary Judgment in the above-captioned matter.

**I.**     **Preliminary Statement**

The evidence demonstrates that PennyMac did not violate the West Virginia Consumer Credit and Protection Act ("WVCCPA") W.Va. Code § 46A-2-127 and § 46A-2-128.

PennyMac services the mortgage loan issued to plaintiff Jessica Stoler ("Plaintiff") in April 2014. After defaulting on her loan in November 2016, Plaintiff submitted three loss mitigation applications to PennyMac between March 2017 and January 2018. PennyMac timely and appropriately addressed each of Plaintiff's loss mitigation applications: it denied Plaintiff's March 2017 application because she had insufficient net cash flow, ineligible borrower income, and a housing expense ratio that was outside of acceptable range; it provided Plaintiff with a USDA Special Forbearance Plan in response to Plaintiff's June 2017 application; and it denied Plaintiff's January 2018 application as it was submitted and received less than thirty-seven days before the scheduled trustee's sale of the Property. PennyMac neither misrepresented its reasons

for denying Plaintiff's January 2018 application, nor failed to process Plaintiff's loss mitigation applications in an unfair or unconscionable manner.

Plaintiff argues that PennyMac violated W.Va. § 46A-2-128(e) by directly sending her communications following her notice to PennyMac that she was represented by counsel. However, Plaintiff's notice was not effective as it was not sent to PennyMac's registered agent listed with the West Virginia Secretary of State, and the communications that PennyMac sent were exempted by Section 128(e) as they were regular account statements or notices required by law.

Accordingly, Plaintiff cannot establish a claim under the WVCCPA, W.Va. Code § 46A-2-127 and § 46A-2-128, and PennyMac respectfully requests this Court enter summary judgment in its favor on Count I of Plaintiff's complaint.

## II. Statement of Undisputed Material Facts

1. On April 10, 2014, Plaintiff obtained a $109,693.00 mortgage loan ("Loan") through Polaris Home Funding Corp. to purchase the property located at 2122 21st Street, Nitro, West Virginia, 25143 ("Property"). Complt., ¶ 4.

2. The Loan was made pursuant to the Single Family Housing Guaranteed Loan Program offered through the U.S. Department of Agriculture Rural Housing Service ("RHS"). Complt., ¶¶ 4 – 5.

3. The Loan is evidenced by a promissory note dated April 10, 2014 (the "Note"). Ex. A, Declaration of Karen Scott ("Scott Decl."), ¶ 9, Ex. A-1, Stoler_PennyMac_000135 - 138.

4. The Note is secured by a deed of trust dated April 10, 2014, which is recorded in the records of Kanawha County, West Virginia (the "Deed of Trust"), and which encumbers the

Property.  Ex. A, Scott Decl., ¶ 10, Ex. A-2, Stoler_PennyMac_000001 – 22.

5. PennyMac is the current servicer for the Loan.  Complt., ¶ 6.

6. PennyMac uses a software program that incorporates the RHS's requirements for RHS guaranteed loans, and PennyMac's role as a servicer is to input data provided by the borrower into the software program in order to determine the borrower's eligibility for loss mitigation options.  Ex. C, Deposition of Karen Scott ("Scott Depo."), 38:20-24, 39:1-4.

7. The software program advises PennyMac as to what options a particular borrower is eligible for, and under RHS regulations, PennyMac does not have the ability to change the decisions made by the program.  Ex. C, Scott Depo., 39:12-15.

8. Plaintiff defaulted on the terms of the Note on November 1, 2016 by failing to make the monthly payment due on that date.  Ex. A, Scott Decl., ¶ 11, Ex. A-3, Stoler_PennyMac_001009.

9. On or about March 1, 2017, Plaintiff submitted a request for mortgage assistance to PennyMac.  Ex. A, Scott Decl., ¶ 12, Ex. A-4, Stoler_PennyMac_000653 – 688.

10. On April 7, 2017, PennyMac sent Plaintiff a letter denying her loan modification application because under the U.S. Department of Agriculture's proprietary loan modification program, Plaintiff had insufficient net cash flow, ineligible borrower income, and a housing expense ratio that was outside of acceptable range.  Ex. A, Scott Decl., ¶ 13, Ex. A-5, Stoler_PennyMac_000728 – 732.

11. On June 16, 2017, PennyMac received a mortgage assistance application from Plaintiff dated June 8, 2017.  Ex. A, Scott Decl., ¶ 14, Ex. A-6, Stoler_PennyMac_000854 – 889.

12. On June 30, 2017, PennyMac sent Plaintiff a letter stating that she had been

approved for a Special Forbearance Plan, with reduced payments of $411.73 due on the first of the month from July 2017 through December 2017. Ex. A, Scott Decl., ¶ 15, Ex. A-7, MSJ_000123.

13. Plaintiff made the forbearance payments for July 2017, August 2017, September 2017, and October 2017, and was unable to make the payments for November 2017 and December 2017 because of the termination of her unemployment compensation. Ex. D, Deposition of Jessica Stoler ("Stoler Depo."), 24:7-14.

14. PennyMac's Communication Call History shows that Plaintiff did not make any inbound calls to PennyMac in November 2017, and PennyMac's Communication Notes History shows that a PennyMac representative attempted to call Plaintiff four times in November 2017 to discuss Plaintiff's employment status and the November 2017 monthly installment under the forbearance plan. Ex. A, Scott Decl., ¶ 16, Ex. A-8, Stoler_PennyMac_001010, 001013.

15. On December 5, 2017, PennyMac sent Plaintiff a letter denying her mortgage assistance application because Plaintiff defaulted on the USDA Special Forbearance Plan. Ex. A, Scott Decl., ¶ 17, Ex. A-9, Stoler_PennyMac_000941 – 942.

16. On December 20, 2017, Plaintiff called PennyMac to discuss mortgage assistance options for her Loan. A telephonic request for a loan modification is not considered an application for a loan modification. Ex. C, Scott Depo., 40:1-9.

17. On the December 20, 2017 call, Plaintiff was informed by a PennyMac representative that her Loan was in active foreclosure given her default, and that the foreclosure process could not be suspended until a complete mortgage assistance application was received by PennyMac. Ex. A, Scott Decl., ¶ 5. Specifically, on the December 20, 2017 call, the PennyMac

representative started by stating, "I'd like to inform you of the account status, which currently reflects an active foreclosure in process. At this there's no scheduled sale date, but one can be assigned at any time." Ex. B, Declaration of Francis X. Crowley ("Crowley Decl."), ¶ 2, Ex. B-1, 2:12-17. Plaintiff asked, "Am I at least protected while I'm waiting for these seven to ten days giving the review?" and the PennyMac representative responded, "No. The only time we're going to go ahead and suspend the foreclosure is when we let you know we're awaiting the decision." Ex. B, Crowley Decl., ¶ 2, Ex. B-2, 4:13-21. The PennyMac representative explained that "While [PennyMac] await[s] for a decision, we do halt all activity pending that decision" and that "until the account is brought current, collection activity, late charges, and credit reporting, including foreclosure proceedings will continue." Ex. B, Crowley Decl., ¶ 2, Ex. B-2, 5:6-17.

18. On December 21, 2017, PennyMac sent Plaintiff a letter indicating that Plaintiff had called PennyMac to start the application process for a loan modification or other payment assistance. It enclosed a blank mortgage assistance application and stated that PennyMac would accept documentation to complete the application until January 20, 2018. The letter also stated that PennyMac "will continue to accept good faith applications up until 37 days before a scheduled sale date[.]" Ex. A, Scott Decl., ¶ 18, Ex. A-10, Stoler_PennyMac_000946 – 955.

19. On January 3, 2018, Seneca Trustees, Inc. sent Plaintiff a notice of trustee's sale stating that a trustee's sale of the Property was scheduled for January 30, 2018. Ex. A, Scott Decl., ¶ 19, Ex. A-11, MSJ_000001 – 3.

20. On January 8, 2018, PennyMac received Plaintiff's mortgage assistance application dated December 29, 2018. Ex. A, Scott Decl., ¶ 20, Ex. A-12,

Stoler_PennyMac_000960 – 968.

21. January 8, 2018 was the first time PennyMac received a mortgage assistance application from Plaintiff following Plaintiff's December 20, 2017 call discussing mortgage assistance options. Ex. C, Scott Depo., 41:1-5.

22. On January 10, 2018, PennyMac sent Plaintiff a letter denying Plaintiff's loan modification application "because the investor guideline prohibits the modification of a loan when the borrower requests the modification within 37 days of the foreclosure sale date." Ex. A, Scott Decl., ¶ 21, Ex. A-13, Stoler_PennyMac_000969 – 971.

23. On January 23, 2018, PennyMac sent Plaintiff a letter stating that she was denied for a deed in lieu because her "request was submitted with insufficient time to evaluate the Deed in Lieu prior to the scheduled foreclosure sale[.]" Ex. A, Scott Decl., ¶ 22, Ex. A-14, Stoler_PennyMac_000995 – 997.

24. Plaintiff sent a letter to PennyMac dated January 25, 2018, indicating that she had retained counsel to represent her. Ex. A, Scott Decl., ¶ 23, Ex. A-15, MSJ_000494 – 495. Plaintiff's January 25, 2018 letter was sent to CT Corporation System at 5400 D Big Tyler Road, Charleston, WV 25313 and PennyMac Loan Services, LLC at P.O. Box 514387, Los Angeles, CA 90051-4387. *Id*.

25. PennyMac's registered agent with the West Virginia Secretary of State is CT Corporation System located at 1627 Quarrier St., Charleston, WV 25311 -2124. Ex. A, Scott Decl., ¶ 4.

26. PennyMac's principal place of business is 3043 Townsgate Road, Suite 200, Westlake Village, CA 91361. Ex. A, Scott Decl., ¶ 4.

27. After PennyMac's receipt of Plaintiff's January 25, 2018 letter, PennyMac sent Plaintiff thirty-two written communications, which generally consisted of regular account statements and other notices required by law; of these thirty-two written communications, there were seventeen monthly mortgage statements, one 1098 form for tax purposes, one escrow analysis, one privacy notice, one payoff statement requested by Plaintiff, four letters explaining mitigation options, four notices of payments received and posted, and three partial payment letters describing how the partial payments were applied to Plaintiff's Loan. Ex. A, Scott Decl., ¶¶ 6, 24; Ex. A-16, Stoler_PennyMac_001438 – 1478, 001487 – 1523.

28. At deposition, Plaintiff admitted that the communications she received after submitting the letter dated January 25, 2018 generally were regular account statements and similar documents. "Q: Okay. And would you agree that most of the documents that you have received from PennyMac during that time period have, in fact, been the monthly mortgage statements? A: Most of them." Ex. D, Stoler Depo., 49:22-24, 50:1-2.

29. The trustee's sale of the Property scheduled for January 30, 2018 was cancelled and has not been rescheduled. No sale has taken place and Plaintiff has remained in the Property. Ex. A, Scott Decl., ¶ 8.

30. Since making her October 2017 reduced payment under the Special Forbearance Plan, Plaintiff has made two monthly payments of the regular amount due, approximately $705.00 in May and April 2018, and two token payments of $20.00 each on July 2, 2018 and July 9, 2018. Ex. A, Scott Decl., ¶ 7.

### III. Standard of Review

A Court must grant summary judgment where there is no genuine dispute as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008). Although the facts must be viewed in the light most favorable to the non-moving party, a "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)).

"[I]n reviewing the evidence [on a summary judgment motion], a judge must determine 'whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Short v. Wells Fargo Bank Minnesota, N.A.*, 401 F.Supp.2d 549, 553 (S.D. W.Va. Nov. 18, 2005).

## IV. <u>Argument</u>

As set forth in the Court's Order of February 19, 2019, granting in part and denying in part PennyMac's Motion to Dismiss, Plaintiff's sole remaining claim alleges that PennyMac violated Sections 46A-2-127 and 46A-2-128 of the WVCCPA by (1) misrepresenting the reason it denied her January 2018 loss mitigation application, (2) improperly scheduling a foreclosure sale despite representing that the loss mitigation process was ongoing, and (3) improperly contacting Plaintiff directly despite being informed that she was represented by counsel. Each alleged act is addressed in turn.

### A. **Summary Judgment Should Be Entered in PennyMac's Favor Because PennyMac Did Not Misrepresent the Reason It Denied Plaintiff's January 2018 Loss Mitigation Application in Violation of WVCCPA Section 46A-2-127.**

8

W.Va. Code § 46A-2-127 states that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." Plaintiff alleges that PennyMac misrepresented its reason for denying Plaintiff's January 8, 2018 loan modification application when it claimed that the request for assistance was made within thirty-seven days of a scheduled foreclosure sale. Complt., ¶ 16.

As evidenced by the record, Plaintiff defaulted on the Special Forbearance Plan for her Loan when she failed to make her November 2017 and December 2017 reduced monthly payments. Ex. D, Stoler Depo., 24:7-14. Subsequently, PennyMac attempted to contact Plaintiff in November 2017 to discuss Plaintiff's employment status and Plaintiff's November 2017 monthly installment, but PennyMac was unable to make contact with her. Ex. A, Scott Decl., ¶ 16, Ex. A-8, Stoler_PennyMac_001010, 001013. Plaintiff then contacted PennyMac on or about December 20, 2017 to discuss mortgage assistance options available to her. Ex. C, Scott Depo., 40:1-9. Plaintiff's December 20, 2017 call is not considered an application for mortgage assistance. *Id*. On or about January 3, 2018, a trustee's sale of the Property was scheduled for January 30, 2018. Ex. A, Scott Decl., ¶ 19, Ex. A-11, MSJ_000001 – 3. On January 8, 2018, PennyMac received for the first time since December 20, 2017, a written mortgage assistance application from Plaintiff. Ex. A, Scott Decl., ¶ 20, Ex. A-12, Stoler_PennyMac_000960 – 968; Ex. C, Scott Depo., 41:1-5. As the application was received within thirty-seven days of the January 30, 2018 trustee's sale date, Plaintiff's January 8, 2018 application was denied. Ex. A, Scott Decl., ¶ 21, Ex. A-13, Stoler_PennyMac_000969 – 971.

Pursuant to federal regulations implementing the requirements of the Real Estate

9

Settlement Procedures Act, a mortgage servicer is not required to stop foreclosure proceedings unless it receives a complete loss mitigation application at least thirty-seven days before a foreclosure sale. *See* 12 C.F.R. 1024.41(g) ("If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale[.]"); *Hanson v. AmeriHome Mortgage Co., LLC*, No. 2:17-cv-03691, 2018 WL 5928369, *3 (S.D.W.Va. Nov. 13, 2018) ("[P]ursuant to federal regulations, [the servicer] was not required to stop foreclosure proceedings until [the servicer] received a complete loss mitigation application.")

PennyMac did not misrepresent the reason that it denied Plaintiff's January 8, 2018 mortgage application because it was indeed received by PennyMac less than thirty-seven days before the January 30, 2018 trustee's sale.

### B. Summary Judgment Should Be Entered in PennyMac's Favor Because PennyMac Appropriately Addressed Each of Plaintiff's Loss Mitigation Requests and Accordingly Did Not Violate Section 46A-2-128.

Section 128 of the WVCCPA generally prohibits a debt collector from using unfair or unconscionable means to collect or attempt to collect any claim. Here, Plaintiff argues that PennyMac violated Section 128 by failing to properly process Plaintiff's loss mitigation applications under the applicable agreements and guidelines. Complt., ¶ 19. As demonstrated by the record, PennyMac timely and appropriately responded to each of Plaintiff's loss mitigation applications.

First, Plaintiff submitted a loss mitigation application on or about March 1, 2017, and on

April 7, 2017, PennyMac sent Plaintiff a letter denying her loan modification application because under the U.S. Department of Agriculture's proprietary loan modification program, Plaintiff had insufficient net cash flow, ineligible borrower income, and a housing expense ratio that was outside of acceptable range. Ex. A, Scott Decl., ¶¶ 12, 13, Exs. A-4, A-5, Stoler_PennyMac_000653 – 688, 000728 – 732. Plaintiff then submitted a second request for loss mitigation dated June 8, 2017, which PennyMac evaluated and approved on June 30, 2017, providing Plaintiff with a Special Forbearance Plan with reduced monthly payments of $411.73 due on the first of the month from July 2017 through December 2017. Ex. A, Scott Decl., ¶¶ 14, 15, Exs., A-6, A-7, Stoler_PennyMac_000854 – 889; MSJ_000123. Plaintiff defaulted on this forbearance plan when she failed to make the November 2017 and December 2017 payments. Ex. D, Stoler Depo., 24:7-14. On January 3, 2018, a trustee's sale of the Property was scheduled for January 30, 2018. Ex. A, Scott Decl., ¶ 19, Ex. A-11, MSJ_000001 – 3.

Plaintiff submitted a third loss mitigation application dated December 29, 2017 that was received by PennyMac on January 8, 2018; however, it was received within thirty-seven days of a scheduled foreclosure sale, and accordingly, PennyMac denied the application. Ex. A, Scott Decl., ¶¶ 20, 21, Exs. A-12, A-13, Stoler_PennyMac_000960 – 971; Ex. C, Scott Depo., 41:1-5; *see* 12 C.F.R. 1024.41(g).

Plaintiff specifically takes issue with the January 8, 2018 loss mitigation application. However, she was aware that she had defaulted on her Loan and Special Forbearance Plan in November 2017 and December 2017, and further she was informed by a PennyMac representative on December 20, 2017 that her Loan was in active foreclosure, that a foreclosure sale could be scheduled at any time, and that said foreclosure could not be suspended without the

receipt of a complete mortgage assistance application. Ex. B, Crowley Decl., ¶ 2, Ex. B-1, 2:12-17, Ex. B-2, 4:17-21.

The facts of the instant case are akin to the facts of *Hanson v. AmeriHome Mortgage Co., LLC*, No. 2:17-cv-03691, 2018 WL 5928369, *3 (S.D.W.Va. Nov. 13, 2018). In *Hanson*, the borrower similarly alleged violations of W.Va. § 46A-2 by "[d]irecting its appointed trustee to proceed with scheduling a foreclosure sale despite representing to [the borrowers] that the loss mitigation process was ongoing[.]" *Id*. at *4. The court in *Hanson* granted summary judgment in favor of the servicer because the notices issued by the servicer "explicitly state[d] that the foreclosure process would continue until [the servicer] received a completed loss mitigation application." *Id*.

Here, on the December 20, 2017 call between Plaintiff and PennyMac, the PennyMac representative started by stating, "I'd like to inform you of the account status which currently reflects an active foreclosure in process. At this there's no scheduled sale date, but one can be assigned at any time." Ex. B, Crowley Decl., ¶ 2, Ex. B-1, 2:12-17. Plaintiff asked, "Am I at least protected while I'm waiting for these seven to ten days giving the review?" and the PennyMac representative responded, "No. The only time we're going to go ahead and suspend the foreclosure is when we let you know we're awaiting the decision." Ex. B, Crowley Decl., ¶ 2, Ex. B-2, 4:13-21. The PennyMac representative explained that "While [PennyMac] await[s] for a decision, we do halt all activity pending that decision," and that "until the account is brought current, collection activity, late charges, and credit reporting, including foreclosure proceedings will continue." Ex. B, Crowley Decl., ¶ 2, Ex. B-2, 5:6-17.

Analogous to *Hanson*, here, Plaintiff was expressly informed that her account was in

12

active foreclosure following her default on the Special Forbearance Plan, that a foreclosure sale could be scheduled at any time, and that foreclosure proceedings could not be halted until PennyMac received a completed loss mitigation application. Further, as discussed in Section IV.A. *supra*, PennyMac followed federal regulations in denying Plaintiff's January 2018 loss mitigation application which was received within thirty-seven days of the scheduled foreclosure sale. As PennyMac expressly and accurately communicated to Plaintiff the status of her Loan and processed her application in accordance with applicable laws and regulations, PennyMac did not use unfair and unconscionable means to collect or attempt to collect a claim from Plaintiff in violation of W.Va. § 46A-2-128.

> **C. Summary Judgment Should Be Entered in PennyMac's Favor Because PennyMac's Contacts with Plaintiff Following Her Notification Did Not Violate Section 46A-2-128 Since Plaintiff's Notification Was Not Sent to PennyMac's Registered Agent and the Contacts Fall Within an Exemption to the Statute.**

Section 128(e) of the WVCCPA prohibits a debt collector from directly contacting a consumer more than seventy-two hours after receiving written notice through its registered agent that the consumer is represented by an attorney with regard to the relevant debt. PennyMac admits that it sent Plaintiff written communications following the receipt of Plaintiff's January 25, 2018 letter indicating that she had retained counsel to represent her with respect to her Loan. Ex. A, Scott Decl., ¶ 6. However, the protections under Section 128(e) are only triggered when such notice is "sent by certified mail, return receipt requested, to the debt collector's registered agent, identified by the debt collector at the office of the West Virginia Secretary of State or, if not registered with the West Virginia Secretary of State, then to the debt collector's principal place of business." W. Va. § 46A-2-128(e). Here, Plaintiff's January 25, 2018 notice letter was not sent to the registered agent identified by PennyMac at the office of the West Virginia

Secretary of State. The address of PennyMac's registered agent listed with the West Virginia Secretary of State is 1627 Quarrier St., Charleston, WV 25311 -2124, while Plaintiff's January 25, 2018 letter was sent to 5400 D Big Tyler Road, Charleston, WV 25313. Ex. A, Scott Decl., ¶¶ 4, 23, Ex. A-15, MSJ_000494 – 495. Even if PennyMac had not been registered with the West Virginia Secretary of State and PennyMac's principal place of business was an acceptable alternative address for the notice, PennyMac's principal place of business is 3043 Townsgate Road, Suite 200, Westlake Village, CA 91361, while Plaintiff's January 25, 2018 notice letter was sent to P.O. Box 514387, Los Angeles, CA 90051-4387. Ex. A, Scott Decl., ¶¶ 4, 23, Ex. A-15, MSJ_000494 – 495. As the Section 128(e) notice was not sent to the proper address, the notice was ineffective and PennyMac did not violate Section 128(e) by sending Plaintiff communications following her January 25, 2018 notice letter.

Moreover, each of these communications falls under an explicit exception to Section 128(e). Specifically, the statute states, "[r]egular account statements provided to the consumer and notices required to be provided to the consumer pursuant to applicable law ***shall not constitute prohibited communications*** under this section[.]" W.Va. § 46A-2-128(e) (emphasis added). Thus, even if PennyMac had received effective notice that Plaintiff was represented, PennyMac still would have been permitted to send regular account statements and notices required by law Plaintiff – which is exactly what transpired in this case.

Here, of the thirty-two written communications sent to Plaintiff following her January 25, 2018 notice letter, seventeen of them were monthly mortgage statements that are expressly exempted by Section 128(e). Ex. A, Scott Decl., ¶¶ 6, 24, Ex. A-16, Stoler_PennyMac_001438 – 39, 001454 -55, 001460 – 62, 001466 – 67, 001493 – 95, 001498 – 001502, 001506 – 13,

001517 – 23. Furthermore, monthly statements are required to be sent to the consumer pursuant to 12 C.F.R. 1026.41 of Regulation Z. 12 C.F.R. 1026.41 ("A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement[.]")

The fifteen remaining communications are also exempted by Section 128(e) as they are notices required to be provided to the consumer pursuant to applicable law. The loss mitigation solicitation notices were sent pursuant to 12 C.F.R. 1026.41(b). Ex. A, Scott Decl., ¶ 24, Ex. A-16, Stoler_PennyMac 001444 – 46, 001463 – 65, 001503 – 05. Additionally, the SCRA notice that was sent to Plaintiff is required to be sent pursuant to HUD Mortgagee Letter 2006-28. Ex. A, Scott Decl., ¶ 24, Ex. A-16, Stoler_PennyMac_001520, 001523. The FHA pamphlet that was sent to Plaintiff was required to be sent pursuant to 24 CFR 203.602 and HUD Mortgagee Letter 2014-1. Ex. A, Scott Decl., ¶ 24, Ex. A-16, Stoler_PennyMac_001474.

## V. Conclusion

WHEREFORE, for the foregoing reasons, PennyMac moves this Court for entry of summary judgment as to Plaintiff's remaining claim.

DATED: August 22, 2019

Respectfully submitted,

/s/ Kevin Eddy
Kevin Eddy (WVSB No. 12360)
Blank Rome LLP
501 Grant Street, Suite 850
Pittsburgh, PA 15219
Tel: 412.932.2757
Email: KEddy@BlankRome.com

Francis X. Crowley (Admitted *pro hac vice*)
Blank Rome LLP
130 North 18th St.
Philadelphia, PA 19103

Tel: 215.569.5500
Email: Crowley@BlankRome.com

Carrie Goodwin Fenwick
R. Booth Goodwin, II
Robert Pruett
Goodwin & Goodwin, PLLC
300 Summers St., Suite 1500
Charleston, WV 25064
Tel: 304-346-7000
Email: cgf@goodwingoodwin.com
      rbg@goodwingoodwin.com
      rsp@goodwingoodwin.com

*Counsel for PennyMac Loan Services, LLC*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

JESSICA A. STOLER,

    Plaintiff,

    v.                                       Civil Action No. 2:18-CV-00988

PENNYMAC LOAN SERVICES, LLC

    Defendant.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **22nd day of August 2019**, I electronically filed the foregoing **Memorandum in Support of Motion for Summary Judgment** with the Clerk of the Court by using the CM/ECF system and electronically served the following:

Bren J. Pomponio
Mountain State Justice, Inc.
1031 Quarrier Street
Suite 200
Charleston, WV 25301
304-344-3144
304-344-3145
*Counsel for Plaintiff*

                                                                     */s/ Kevin Eddy*
                                                                     Kevin Eddy, Esq.