UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JESSICA A. STOLER,

    Plaintiff,

v.                                                         Civil Action no. 2:18-cv-00988

PENNYMAC LOAN SERVICES, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is defendant PennyMac Loan Services, LLC's ("PennyMac") motion for summary judgment, filed August 22, 2019. The plaintiff, Jessica A. Stoler, filed a response, to which the defendant has replied.

### I. Background

This case involves the plaintiff's April 2014 $109,693.00 mortgage loan, provided under United States Department of Agriculture's ("USDA") Single Family Housing Guaranteed Loan Program and serviced by defendant PennyMac. Compl. at ¶¶ 4, 6.

In February 2017, plaintiff experienced a hardship that made it difficult for her to afford her monthly loan payments. Compl. at ¶ 7. On March 1, 2017, plaintiff submitted a loss mitigation application to PennyMac. Mot. Summary Judgment, "ECF # 50," ¶ 9. The court notes that a loss mitigation application "means an oral or written request for a loss mitigation option," which is "an alternative to foreclosure." 12 C.F.R. § 1024.31. When an applicant submits a loss mitigation application, the servicer must determine whether the applicant qualifies for a loan modification to help the applicant bring the account current. See ECF # 50, Ex. B-1, 6. On April 7, 2017, PennyMac sent plaintiff a letter denying plaintiff's loss mitigation application. Id. at ¶ 10.

In May 2017, plaintiff's situation worsened when she lost her job; she again submitted a loss mitigation application to PennyMac on June 8, 2017. Compl. at ¶ 9; ECF # 50 at ¶ 11. On June 30, 2017, PennyMac provided plaintiff with a forbearance plan from July 2017 to December 2017, reducing monthly payments from $704.95 to $411.73. ECF # 50, Ex. A-7.

In November 2017, plaintiff became unable to make her forbearance payments because her unemployment income expired. ECF # 50, Ex. D, 24. She then attempted without success to contact PennyMac several times over a six-week period to inquire

about permanent modification of her loan.  Plaintiff's Mem. In Opposition, "ECF # 53," Ex. B, 25-27.  PennyMac attempted to call plaintiff four times in November 2017 to discuss plaintiff's employment status and the November 2017 monthly payment.  ECF # 50 at ¶ 14.  Plaintiff failed to make the forbearance payments for November and December 2017.  ECF # 50 at ¶ 13.

On December 5, 2017, PennyMac denied plaintiff's request for a further forbearance plan because plaintiff defaulted on the current forbearance plan.  ECF # 50, Ex. A-9.  On December 20, 2017, plaintiff spoke with a PennyMac representative about getting a hold on her foreclosure status and receiving another loan modification.  ECF # 53, Ex. F, 3-4.  The PennyMac representative informed plaintiff that her account reflects an "active foreclosure" and that a foreclosure date could be "assigned at any time."  ECF # 50, Ex B-1, 2.  The representative also informed plaintiff that the foreclosure process would not be suspended until the loss mitigation application was "awaiting decision" by PennyMac.  ECF # 50, Ex B-2, 4-5.

On December 21, 2017, PennyMac sent plaintiff a letter indicating that plaintiff had called PennyMac the previous day to start another loss mitigation application process.  ECF # 50,

Ex. A-10.  PennyMac also enclosed a blank loss mitigation application.  Id.  The letter stated that PennyMac would "continue to accept documentation to complete this application up until 1/20/2018. . . . If your application is denied, we will continue to accept good faith applications up until 37 days before a scheduled sale date."  Id.

Plaintiff sent the loss mitigation application on December 29, 2017.  ECF # 50 at ¶ 20.  On January 3, 2018, Seneca Trustees, Inc. notified plaintiff that a trustee's sale of her property was scheduled for January 30, 2018.  ECF # 50, Ex. A-11.  PennyMac received the plaintiff's loss mitigation application on January 8, 2018.  ECF # 50 at ¶ 20.  On January 10, 2018, PennyMac sent plaintiff a letter denying plaintiff's loss mitigation application because "the investor guideline prohibits the modification of a loan when the borrower requests the modification within 37 days of the foreclosure sale date."  ECF #50, Ex. A-13.

On January 25, 2018, plaintiff contacted PennyMac, notifying it of alleged servicing violations and requesting that future communications be directed to plaintiff's counsel.  ECF # 50, Ex. A-15.  After receiving this letter, PennyMac sent plaintiff written communications and contacted her by telephone.  ECF # 50 at ¶ 27; ECF # 53, Ex. L.

Since plaintiff's last payment under the forbearance plan in October 2017 to now, two years later, plaintiff has made two monthly payments of $705.00, the regular amount due, and two token payments of $20.00 while continuing to occupy the property. ECF # 50 at ¶ 29-30.

Plaintiff filed this action in the Circuit Court of Kanawha County on May 2, 2018, bringing claims for violations of the West Virginia Consumer Credit Protection Act ("WVCCPA") (Count I), negligence (Count II), tortious interference with contract (Count III), and estoppel (Count IV).

PennyMac removed the action to this court on June 1, 2018, pursuant to the court's diversity jurisdiction. The plaintiff's motion to remand was denied.

PennyMac filed a motion to dismiss on June 15, 2018. The court granted the motion to dismiss for all counts, except Count I insofar as it alleges that PennyMac violated the WVCCPA by misrepresenting the reason for denying Ms. Stoler's request for loss mitigation, ignoring Ms. Stoler's requests for additional loss mitigation after she failed to make her forbearance plan payments and instead scheduling foreclosure, and contacting Ms. Stoler individually after it was advised that she was represented by counsel. PennyMac now seeks summary judgment on the remaining claim.

## II. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party. Anderson, 477 U.S. at 248.

Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). A party is entitled to summary judgment if the record, as a whole, could not lead a rational trier of fact to find for the non-moving party. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

## III. Discussion

A. W. Va. Code § 46A-2-127 Claim

Section 46A-2-127 of the WVCCPA provides that "[n]o debt collector shall use any fraudulent, deceptive, or misleading representation or means to collect claims or to obtain information concerning consumers." W. Va. Code § 46A-2-127.

In its motion for summary judgment, PennyMac contends that denying plaintiff's loss mitigation application after receiving the application less than 37 days before the foreclosure sale does not constitute a misrepresentation under section 46A-2-127 of the WVCCPA. ECF # 50 at 10. PennyMac relies on the federal regulation, which states,

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale[.]

12 C.F.R. § 1024.41(g).

In response, plaintiff identifies three misrepresentations made by PennyMac. First, plaintiff claims that PennyMac representatives assured her that she would be considered for a loan modification after her forbearance plan

7

ended in December 2017, yet in the written forbearance agreement, Pennymac made the misrepresentations that plaintiff would resume her regular monthly payments at the end of the forbearance agreement and would only be considered for further loss mitigation if all forbearance payments were paid. ECF # 53 at 10. However, the only evidence of this assurance by PennyMac's representatives is Ms. Stoler's statement that the PennyMac representative informed her that she "could <u>possibly</u> apply for another program when [the forbearance plan] was over." ECF # 53, Ex. F, 3 (emphasis added). On December 5, 2017, when the forbearance plan was over, PennyMac denied plaintiff's request for a new forbearance plan because, in keeping with the written agreement, plaintiff defaulted on the current forbearance plan. ECF # 50, Ex. A-9. She was told that she could "possibly apply" for another program. Such language is not a commitment that another program would be afforded her and does not constitute a misrepresentation. As will be noted, she did reapply.

Second, plaintiff claims that PennyMac's representative's statements on the December 20, 2017 call that indicated foreclosure will continue are inconsistent with PennyMac's responsibilities under USDA's loss mitigation guidelines. ECF # 53 at 10; <u>See</u> USDA Loss Mitigation Guide at 4

("The servicer must: . . . [u]se loss mitigation whenever feasible to avoid foreclosure."). That, however, is not an endless obligation. PennyMac evaluated plaintiff's account for a loan modification in April 2017, provided plaintiff with a forbearance plan in June 2017, attempted to contact plaintiff after plaintiff missed the November 2017 forbearance plan payment, evaluated plaintiff's account for another forbearance plan in December 2017, and did not schedule foreclosure until January 2018.

Third, plaintiff claims that the December 21, 2017 letter constitutes a misrepresentation. The letter states

> We will continue to accept documentation to complete this application up until 1/20/2018. At that point, we will evaluate the information we have and let you know our decision. If your application is denied, we will continue to accept good faith applications up until 37 days before a scheduled sale date, but you may have to provide updated information and/or show a change in your financial circumstances.

ECF # 50, Ex. A-10, 1. Plaintiff contends that the language is deceptive and misleading for two reasons. First, PennyMac would not have considered the application unless received by December 24, 2017 -- 37 days before the foreclosure sale. However, plaintiff did not receive the letter until approximately December 29, 2017. ECF # 53 at 11. Second, the letter is said to be misleading by stating PennyMac will accept documentation until January 20, 2018, and will evaluate the information

available at that point to discern a decision, when plaintiff would have had to send documentation by December 24, 2017 to comply with the 37-day deadline.  Id.

The PennyMac letter could reasonably be interpreted to mean that PennyMac would accept the loss mitigation application, a form for which was enclosed, until January 20, 2018, and if this application was denied, plaintiff could only resubmit an application if it was at least 37 days before the foreclosure sale.  Plaintiff complied and sent the application on December 29, 2017.  PennyMac received the application on January 8, 2018 and rejected the application by letter sent on January 10, 2018.  Since notice of the January 30, 2018 foreclosure sale occurred on January 3, 2018, plaintiff would have been unable to meet this deadline if the 37-day deadline applied.

Viewing this evidence in the light most favorable to the plaintiff, as the court must, the court finds that there is a genuine issue of material fact as to whether the language in the December 21, 2017 letter is a misleading representation by PennyMac.  PennyMac's motion for summary judgment on the section 46A-2-127 claim is for that reason denied.

B.  W. Va. Code § 46A-2-128 General Claim

Section 46A-2-128 of the WVCCPA provides that "[n]o debt collector may use unfair or unconscionable means to collect or attempt to collect any claim."  W. Va. Code § 46A-2-128.

PennyMac contends that it did not violate section 46A-2-128 by failing to properly process plaintiff's loss mitigation applications because PennyMac "timely and appropriately responded to each of Plaintiff's loss mitigation applications." ECF # 50 at 10.  Regarding the December 29, 2017 loss mitigation application, PennyMac informed plaintiff that her account was in active foreclosure, that a foreclosure sale could be scheduled at any time, and that the foreclosure process would not be stopped until plaintiff submitted a complete loss mitigation application.  Id. at 12-13.  PennyMac contends that it followed federal regulations when it denied plaintiff's December 29, 2017 loss mitigation application, as it was received within 37 days of the scheduled foreclosure sale.  Id. at 13.

Plaintiff asserts that she presented evidence of PennyMac's unconscionable conduct by showing PennyMac violated applicable USDA guidelines.  ECF #53 at 16.  Specifically, she asserts that PennyMac violated the guidelines mandate by (1) denying Ms. Stoler's request for a new forbearance plan on December 5, 2017, and (2) proceeding to foreclosure instead of

11

considering Ms. Stoler's application that PennyMac stated it would accept until January 20, 2018. Id. at 14. Beginning in April 2017, PennyMac followed USDA guidelines by reviewing plaintiff's account for loss mitigation options instead of immediately seeking foreclosure. PennyMac further reviewed plaintiff's account in June 2017 and approved plaintiff for a forbearance plan. PennyMac denied plaintiff's December 2017 forbearance plan request and proceeded to foreclosure when plaintiff was in default, not only on regular loan payments but the forbearance plan as well. PennyMac's conduct in this regard does not rise to an unconscionable level. However, a reasonable fact-finder could conclude that proceeding to foreclosure on January 3, 2018, instead of considering plaintiff's loan modification application that PennyMac stated it would accept until January 20, 2018, constitutes an unfair practice by PennyMac.

C. W. Va. Code § 46A-2-128(e)

WVCCPA section 46A-2-128 further provides specific examples of conduct deemed to violate the section. Subsection (e) of the statute provides that "[a]ny communication with a consumer made more than three business days after the debt collector receives written notice from the consumer or his or her attorney that the consumer is represented by an attorney

specifically with regard to the subject debt" constitutes unfair or unconscionable conduct. The subsection further provides:

> To be effective under this subsection, such notice must clearly state the attorney's name, address and telephone number and be sent by certified mail, return receipt requested, to the debt collector's registered agent[.] . . . Regular account statements provided to the consumer and notices required to be provided to the consumer pursuant to applicable law shall not constitute prohibited communications under this section[.]

W. Va. Code § 46A-2-128(e).

First, PennyMac contends that plaintiff's notice was not effective because it was not sent to PennyMac's registered agent at the "1627 Quarrier Street, Charleston, WV" address, as identified by PennyMac at the West Virginia Secretary of State's office. ECF # 50 at 13-14. However, plaintiff has presented evidence that at the time the notice was sent, the address for PennyMac's registered agent was the "5400 D Big Tyler Road, Charleston, WV" address, creating a genuine dispute of fact. See ECF # 53, Ex. M.

Next, PennyMac moved for summary judgment on the section 46A-2-128(e) claim, alleging that the exception to section 46A-2-128(e)'s general prohibition applies in this case because the communications sent after plaintiff retained counsel were regular account statements or notices required by law. ECF # 50 at 14. Plaintiff concedes that the some seventeen monthly

mortgage statements are exempt from the statute as regular account statements.  See ECF # 53 at 17.

Inasmuch as there is insufficient evidence to rule at this juncture on the remaining contacts in issue, the motion for summary judgment is denied as to them.  Those consist of two Servicemembers Civil Relief Act ("SCRA") notices, one Federal Housing Administration ("FHA") pamphlet, three phone calls, four loss mitigation solicitation notices, one 1098 tax form, one escrow analysis, one privacy notice, one payoff statement, four payment notices, three partial payment letters, and two emails.

## IV. Conclusion

Accordingly, it is ORDERED as follows:

1. That PennyMac's motion for summary judgment is granted as to plaintiff's W. Va. Code § 46A-2-127 claim except that the motion is denied insofar as it is claimed that PennyMac's December 21, 2017 letter constitutes a misrepresentation;

2. That PennyMac's motion for summary judgment is granted as to plaintiff's W. Va. Code § 46A-2-128 general claim that PennyMac participated in unconscionable conduct but is denied insofar as it is claimed that PennyMac participated in unfair conduct as noted above; and

3. That PennyMac's motion for summary judgment with respect to plaintiff's W. Va. Code § 46A-2-128(e) claim is granted as to the some seventeen monthly mortgage statements and is otherwise denied.

The Clerk is directed to transmit this memorandum opinion and order to all counsel of record.

ENTER: October 11, 2019

_____
John T. Copenhaver, Jr.
Senior United States District Judge